UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| JESUS LOPEZ, for himself and as the Guardian ad Litem for EDGAR LOPEZ, ALEXANDRA LOPEZ, and GRETSANDY LOPEZ, his minor children,<br><br>          Plaintiff,<br>v.<br>CONTRA COSTA REGIONAL MEDICAL CENTER and COUNTY OF CONTRA COSTA<br><br>          Defendants.<br>_____/ | No. C 12-03726 LB<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS |

## I. INTRODUCTION

Plaintiff Jesus Lopez in his individual capacity, and as the Guardian ad Litem for his three minor children Edgar, Alexandra, and Gretsandy Lopez, is suing Defendants Contra Costa Regional Medical Center and County of Contra Costa (together, "CCRMC"[1]) for medical malpractice and for violating the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, following the death of Mr. Lopez's wife from complications after she gave birth at Contra Costa Regional Medical Center. For the reasons discussed below, the court GRANTS Defendants' motion to dismiss Plaintiffs' EMTALA claim and declines to exercise supplemental jurisdiction over

---

[1] For the purposes of the present motion, the court need not distinguish between the Defendants, and refers to them individually and together, as CCRMC.

their state law medical malpractice claim.

## II. BACKGROUND

Plaintiff Jesus Lopez is the surviving spouse of Sandra Lopez, and Plaintiffs Edgar, Alexandra, and Gretsandy Lopez are their children. Compl., ECF No. 1, ¶ 2.[2] Plaintiffs allege that on or around September 29, 2011, Sandra Lopez was admitted to CCRMC to deliver her third child, Gretsandy Lopez. *Id.* ¶ 3. CCRMC allegedly diagnosed Mrs. Lopez with several serious complications, including pre-eclampsia, eclampsia and HELLP syndrome. *Id.* ¶ 4. Mrs. Lopez previously had been diagnosed with pre-eclampsia when she delivered her second child. *See id. ¶ 11*. After the diagnosis this time, CCRMC ordered Mrs. Lopez to be transferred to the Intensive Care Unit ("ICU"). *Id.* ¶ 5. CCRMC did not transfer Mrs. Lopez, however, because its ICU was full. *Id.* CCRMC did not stabilize Mrs. Lopez within the meaning of the EMTALA. *Id.* Plaintiffs allege that CCRMC did not transfer Mrs. Lopez to another hospital as required under EMTALA and, as a result, Mrs. Lopez died. *Id.* ¶¶ 5-8. Plaintiffs also allege that CCRMC employees were negligent in that they failed to inform Mr. and Mrs. Lopez about Mrs. Lopez's previous pre-eclampsia diagnosis, failed to monitor Mrs. Lopez's pregnancy for pre-eclampsia, and provided treatment that did not meet the applicable standard of care. *Id.*

Plaintiffs filed this suit on July 16, 2012, claiming CCRMC violated EMTALA and also bringing a state law claim for medical malpractice. *Id.* Plaintiffs seek damages in excess of $5,000,000 for the EMTALA violation and over $750,000 for medical malpractice. *Id.* ¶¶ 9, 12. On July 25, 2012, the court appointed Mr. Lopez as the guardian ad litem for his three minor children. *Id.* ¶ 7; *see also* Order, ECF No. 7. Defendants filed a motion to dismiss Plaintiffs' complaint on August 6, 2012.[3]

---

[2] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page numbers at the top of the document.

[3] Defendants apparently construed the complaint as naming a single entity, "Contra Costa Regional Medical Center and County of Contra Costa." *See* Mot., ECF No. 8 at 1-2. Plaintiffs argue that Defendants were separately named and served and that the court should construe the motion to dismiss as if it were filed only by Contra Costa County and not by Contra Costa County Regional Medical Center. Opp'n, ECF No. 11 at 2. While the court agrees that Plaintiffs named two entities, they provide no support for their assertion that the court should construe the motion as

ORDER C 12-03726 LB            2

*See* ECF No. 8.

## III.  LEGAL STANDARD

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. See *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parenthetical omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff.  *See id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007).

If the court dismisses the complaint, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir.1990)).

---

being brought by just one party.  Accordingly, Plaintiffs' request is denied.

Plaintiffs also ask the court to deny CCRMC's motion because it allegedly lacks a statement of the issues to be decided, as required by Civil Local Rule 7-4(a)(3).  The court disagrees.  The introductory section of CCRMC's motion satisfies the local rules and Plaintiffs fail to explain why such a drastic sanction would be appropriate if it were otherwise.

ORDER C 12-03726 LB                                3

### IV.  DISCUSSION

CCRMC argues that Plaintiffs fail to state a claim because EMTALA does not apply to a patient – like Mrs. Lopez – who is admitted for care.  Motion, ECF No. 8 at 4-6.  It then argues that the court should not assert supplemental jurisdiction over Plaintiffs' state law medical malpractice claim.

**A. EMTALA Claim**

Congress passed EMTALA, also known as the "Patient Anti Dumping Act," to prohibit hospital emergency rooms from refusing to treat indigent and uninsured patients or transferring patients to other hospitals without first stabilizing their condition.  *See Jackson v. E. Bay Hosp.*, 246 F.3d 1248, 1254 (9th Cir. 2001).  When a individual requests treatment in a hospital emergency department, EMTALA requires the hospital to "provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including available ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition [as defined in the statute] exists." 42 U.S.C. § 1395dd(a).  If the hospital determines that the individual has an emergency medical condition, the hospital must "provide either --

(A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize[4] the medical condition, or

(B) for transfer[5] of the individual patient to another medical facility in accordance with subsection (c) of this section.

42 U.S.C. § 1395dd(b)(1).  Subsection (c) is titled "Restricting transfers until individual is stabilized," and it sets forth the conditions that must be met before a hospital may transfer an unstabilized patient:

(1) Rule

---

[4] A hospital "stabilizes" a patient by providing sufficient treatment that the patient's condition is not likely to materially deteriorate during or as a result of transfer or, where the emergency medical condition is a pregnant woman having contractions, to deliver the child.  42 U.S.C. § 1395dd(e)(3)(A).

[5] EMTALA defines "transfer" as "the movement (including the discharge) of an individual outside a hospital's facilities at the direction of any person employed by . . . the hospital . . . ."  42 U.S.C. § 1395dd(e)(4).

ORDER C 12-03726 LB                                4

> If an individual at a hospital has an emergency medical condition which has not been stabilized (within the meaning of subsection (e)(3)(b) of this section), the hospital may not transfer the individual unless –
>
> > (A)(I) the individual (or a legally responsible person acting on the individual's behalf) after being informed of the hospital's obligations under this section and of the risk of transfer, in writing requests transfer to another medical facility;
> >
> > (ii) a physician . . . has signed a certification that based on the information available at the time of the transfer, the medical benefits reasonably expected from the provision of appropriate medical treatment at another medical facility outweigh the increased risks to the individual, and in the case of labor, to the unborn child from effecting the transfer;[6] or
>
> (iii) if a physician is not present in the emergency department at the time the individual is transferred, a qualified medical person . . . . has signed a certification [as described in section ii] . . . after a physician . . . , in consultation with the [qualified medical] person, has made the determination [described in section ii] . . . and subsequently countersigns the certification; and
>
> (B) the transfer is an appropriate transfer . . . .

42 U.S.C. § 1395dd(c)(1). An "appropriate transfer to a medical facility is a transfer –

> (A) in which the transferring hospital provides the medical treatment within its capacity which minimizes the risks to the individual's health and, in the case of a woman in labor, the health of the unborn child;
>
> (B) in which the receiving facility –
>
> > (I) has available space and qualified personnel for the treatment of the individual; and
> >
> > (ii) has agreed to accept transfer of the individual and to provide appropriate medical treatment;
>
> (C) in which the transferring hospital sends to the receiving hospital all medical records . . . relating to the emergency condition [including records of the medical condition, observations of signs or symptoms, diagnosis, and test results] . . . and the informed written consent . . .;
>
> (D) in which the transfer is effected through qualified personnel and transportation equipment [including the use of life support measures during the transfer] . . . ; and
>
> (E) which meets other such requirements as the Secretary may find necessary in the health and safety of individuals transferred.

42 U.S.C. § 1395dd(c)(2).

In 2003, the Centers for Medicare & Medicaid Services of the Department of Health and Human Services promulgated regulations interpreting key EMTALA provisions. *See* 42 C.F.R. § 489.24

---

[6] The certification must include a summary of the risks and benefits upon which the certification is based. 42 U.S.C. § 1395dd(c)(1)(B).

ORDER C 12-03726 LB                                5

(2012) (the "CMS Regulations"). The CMS Regulations explain that EMTALA does not apply to patients who have been admitted for treatment:

> (1) [I]f an individual . . . "comes to an emergency department", as defined in paragraph (b) of this section, the hospital must –
>
> (I) Provide an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition exists. The examination must be conducted by an individual(s) . . . qualified under hospital bylaws or rules and regulations and [under 42 C.F.R. § 482.55]; . . . and
>
> (ii) If an emergency medical condition is determined to exist, provide any necessary stabilizing treatment, as defined in paragraph (d) of this section, or an appropriate transfer as defined in paragraph (e) of this section. **If the hospital admits the individual as an inpatient for further treatment, the hospital's obligation under this section ends, as specified in paragraph (d)(2) of this section.**

42 C.F.R. § 489.24(a) (emphasis added). Section 489.24(d) reiterates:

> (d) Necessary stabilizing treatment for emergency medical conditions –
>
> (1) General. Subject to the provisions of paragraph (d)(2) of this section, if any individual . . . comes to a hospital and the hospital determines that the individual has an emergency medical condition, the hospital must provide either –
>
> (I) Within the capabilities of the staff and facilities available at the hospital, for further medical examination and treatment as required to stabilize the medical condition.
>
> (ii) For transfer of the individual to another medical facility in accordance with paragraph (e) of this section.
>
> **(2) Exception: Application to inpatients.**
>
> **(I) If a hospital has screened an individual under paragraph (a) of this section and found the individual to have an emergency medical condition, and admits that individual as an inpatient in good faith in order to stabilize the emergency medical condition, the hospital has satisfied its special responsibilities under this section with respect to that individual.**

42 C.F.R. § 489.24(d) (emphasis added). The CMS Regulations also define the term "inpatient:"

> Inpatient means an individual who is admitted to a hospital for bed occupancy for purposes of receiving inpatient hospital services as described in § 409.10(a) of this chapter with the expectation that he or she will remain at least overnight and occupy a bed even though the situation later develops that the individual can be discharged or transferred to another hospital and does not actually use a hospital bed overnight.

42 C.F.R. § 489.24(b). Finally, section 409.10(a) defines "inpatient hospital services" as including a broad range of services such as "[b]ed and board," "[u]se of hospital . . . facilities," and "[n]ursing services," even when those are considered "emergency services." 42 C.F.R. § 409.10(a).

ORDER C 12-03726 LB                                   6

1    CCRMC argues that Plaintiffs cannot state an EMTALA claim because they acknowledge that
2 Mrs. Lopez was admitted to the hospital, and a hospital cannot be liable under EMTALA for care
3 provided after the hospital admits a patient. Mot., ECF No. 8 at 5-7 (citing *James v. Sunrise*
4 *Hospital*, 86 F.3d 885 (9th Cir. 1996); *Bryant v. Adventist Health Systems/West*, 289 F.3d 1162 (9th
5 Cir. 2002)).

6    In *Bryant*, the court explained that "EMTALA's stabilization requirement ends when an
7 individual is admitted for inpatient care. Congress enacted EMTALA 'to create a new cause of
8 action, generally unavailable under state tort law, for what amounts to failure to treat' and not to
9 'duplicate preexisting legal protections.'" *Bryant*, 289 F.3d 1168-69 (quoting *Gatewood v. Wash.*
10 *Healthcare Corp.*, 933 F.2d 1037 (D.C. Cir. 1991)). CMS's regulations similarly explain that a
11 hospital satisfies its obligations under EMTALA by admitting an individual as an inpatient. *See* 42
12 C.F.R. § 489.24(a)(ii) and (d)(2).

13    Plaintiffs admit that "Sandra Lopez was admitted to [CCRMC] for the delivery of her third child,
14 Gretsandy Lopez." Compl., ¶ 3. Because Mrs. Lopez was admitted to CCRMC, Plaintiffs' remedy
15 is under state malpractice law – not EMTALA. Nor do Plaintiffs cite any authority where a hospital
16 was found liable for not transferring a patient who had already been admitted to the hospital.

17    To the extent that Plaintiffs argue that there is a special obligation for women in labor,[7] just

---

[7] Plaintiffs assert that "a woman in active labor is protected by EMTALA when she is admitted to the hospital to deliver her baby." Opp'n, ECF No. 11 at 3. Plaintiffs point to the regulations, which clarify that a "labor and delivery department" is an emergency department subject to EMTALA liability. *Id.* at 3. Plaintiffs rely on *Torretti v. Main Line Hosps., Inc.*, 580 F.3d 168, 176 n.11 (3d Cir. 2009), in which the court explained in a footnote that labor and delivery departments are "dedicated emergency departments" subject to EMTALA because they "provide care for emergency medical conditions on an urgent, nonappointment basis." At oral argument, Plaintiffs' counsel explained that labor and delivery departments must be considered dedicated emergency departments within the scope of EMTALA or the statute would never protect women in active labor.
   The court agrees – and Defendants do not dispute – that the CMS Regulations clearly indicate that a hospital has EMTALA obligations towards women who request treatment in a labor and delivery department. EMTALA prohibits a labor and delivery department from simply refusing to provide emergency medical care to a woman in active labor. Also, the labor and delivery department must stabilize the woman before transferring her to another hospital in accordance with

UNITED STATES DISTRICT COURT
For the Northern District of California

because a labor and delivery department has EMTALA obligations towards an unadmitted patient does not mean that admitted patients can sue under EMTALA. Similarly, nothing supports a conclusion that labor and delivery departments should be uniquely liable under EMTALA to both admitted and unadmitted patients, and indeed, the applicable regulations and binding authority hold otherwise.

Plaintiffs' main response is that their claim is a "transfer claim," meaning that there is a "third EMTALA requirement[] . . . to transfer the patient when the hospital cannot provide the care that is needed after it determines there is an emergency medical condition." Opp'n, ECF No. 11 at 6 (citing 42 U.S.C. § 1395dd(b)(1)(A) and (B)). At oral argument, Plaintiff's counsel proffered his theory that Mrs. Lopez was diagnosed with an emergency medical condition while she was treated in the labor and delivery department. Then, after the delivery, but before she was "admitted" to the hospital, an unidentified CCRMC employee said that Mrs. Lopez should be admitted to the ICU. When CCRMC staff discovered that the ICU was full, they admitted Mrs. Lopez to a hospital ward instead of transferring her to the ICU at John Muir Medical Center. Plaintiffs' counsel contends that this failure to transfer constituted an EMTALA violation and that it occurred before Mrs. Lopez was admitted to CCRMC.

Plaintiffs' "failure to transfer" argument is not supported by EMTALA, the regulations, or case law. EMTALA imposes two requirements. The hospital must either provide "[w]ithin the capabilities of the staff and facilities available at the hospital, for such further medical examination and treatment as required to stabilize the medical condition" under 42 C.F.R. section 489.24(d)(1)(I) and 42 U.S.C. section 1395dd(b)(1)(A) or, under section 1395dd(b)(1)(B), "transfer the individual to another medical facility in accordance with subsection (c) of this section." Subsection (c) sets forth the rules for transfer of an individual with an emergency medical condition who has not been

---

the other EMTALA requirements.

Plaintiffs' counsel seems to assume that dedicated emergency departments do not also admit patients for inpatient services. The CMS Regulations imply otherwise, however. *See* 42 C.F.R. § 489.24(d)(2)(I) (noting that "admit[ting] an individual as an inpatient in good faith in order to stabilize the emergency medical condition" cuts off EMTALA liability).

ORDER C 12-03726 LB                                    8

stabilized: informed written consent, a certification by a physician or qualified medical person about the risks and benefits of transfer, and an appropriate transfer (such as a receiving facility that agrees to the transfer and has available space and qualified personnel for treatment, transfer of medical records to the receiving facility, and transfer by qualified personnel who can provide life support measures during the transfer). *See* 42 U.S.C. § 1395dd(c)(1). These requirements do not establish a cause of action for failure to transfer an admitted hospital patient just because that patient originally was admitted to the hospital through the emergency room or the labor and delivery department. And as CCRMC points out in its reply, the Ninth Circuit has held that there is no such cause of action. In *James*, the Ninth Circuit explained that "[c]areful examination of [EMTALA's] text supports the proposition that subsection (c) regulates transfers made pursuant to subsections (a) and (b), rather than creating an alternative basis for hospital liability." 86 F.3d at 888.

Here, Plaintiffs' allegations establish that CCRMC admitted Mrs. Lopez and provided her with treatment within the capabilities of the staff and facilities available at the hospital. This was sufficient for EMTALA purposes, and EMTALA did not require CCRMC to transfer Mrs. Lopez to a different hospital.

Regardless, as set forth above, the regulations and case law establish that a hospital's obligations under EMTALA are satisfied by admitting the patient in good faith – and this includes admission to treat an emergency medical condition, such as active labor. *See* 42 C.F.R. §§ 489.24(a)(1)(ii) and (d)(2); *Bryant*, 289 F.3d 1168-69. Because Mrs. Lopez was admitted to CCRMC, and because Mrs. Lopez was provided treatment within the available facilities, Plaintiffs' EMTALA claim fails as a matter of law. Accordingly, the court GRANTS CCRMC's motion to dismiss Plaintiffs' EMTALA claim.

### B. Supplemental Jurisdiction

Having dismissed Plaintiffs' EMTALA claim, the court must decide whether to retain jurisdiction over Plaintiffs' state law medical malpractice claim. In any civil action of which the district court has original jurisdiction, the district court shall have supplemental jurisdiction over related state law claims that are part of the same case or controversy. 28 U.S.C. § 1367(a). A district court may decline to exercise supplemental jurisdiction over a related claim grounded in

1  state law where "(1) the claim raises a novel or complex issue of state law, (2) the claim
2  substantially predominates over the claim or claims over which the district court has original
3  jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or
4  (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." *Id.*
5  at § 1367(c). The court may also decline to exercise supplemental jurisdiction if the retention of the
6  state claims "requires the expenditure of substantial additional judicial time and effort." *Executive*
7  *Software North America, Inc. v. U.S. Dist. Court for Cent. Dist. of California*, 24 F.3d 1545, 1548
8  (9th Cir. 1994); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988); *see also Government*
9  *Employees Ins. Co. v. Dizol* 133 F.3d 1220, 1224 (9th Cir. 1998).

10  Plaintiffs ask the court to retain jurisdiction over their medical malpractice claim. Opp'n at 6-7.
11  The argument in favor of that is as follows: "[f]ederal constitutional issues will arise as to whether
12  the limitations on damages provided by MICRA, Medical Injury Compensation Relief Act, violate
13  the due process clause of the United States Constitution and whether there was a proper exercise of
14  the state's police power in enacting MICRA." Opp'n, ECF No. 11 at 6-7. In reply, CCRMC
15  explains that MICRA modifies various provisions of the California Civil Code and California Code
16  of Civil Procedure to limit medical malpractice judgments. Reply, ECF No. 12 at 8. CCRMC
17  explains that the California appellate and supreme courts have repeatedly held that the MICRA
18  statutes comport with the State constitution. *Id.* (collecting cases). Finally, CCRMC argues that it
19  has not yet asserted its rights under the MICRA statutes so Plaintiffs' claims are speculative at this
20  point in the litigation. *Id.* at 9.

21  Federal courts are courts of limited jurisdiction. Plaintiffs do not (and can not) contend that the
22  court has federal question jurisdiction to decide the constitutionality of the MICRA statutes. The
23  possibility that CCRMC may eventually assert state law defenses that Plaintiffs would like to
24  challenge under federal law does not render this medical malpractice action exceptional or
25  compelling under 28 U.S.C. § 1366(c)(4). Accordingly, the court declines to exercise supplemental
26  jurisdiction over Plaintiffs' state law medical malpractice claim.

## V.  CONCLUSION

The circumstances surrounding this case are tragic, and this court's ruling says nothing about the merits about what may be a compelling state case for medical malpractice.  But for the reasons discussed above, Plaintiffs have not stated a valid federal claim.  Accordingly, the court dismisses Plaintiffs' EMTALA claim and declines to exercise supplemental jurisdiction over their medical malpractice claim.

The issue is whether the dismissal is with or without prejudice.  As the court said at the hearing, the issue seems to be purely legal.  To the extent that Plaintiffs disagree with the court's legal conclusion, a faster process is an appeal.  At the hearing, however, Plaintiffs discussed the possibility of amendment.  Given Rule 15(a)'s liberal standard for leave to amend, the court dismisses the complaint without prejudice.  Plaintiffs have 28 days to file an amended complaint.

This disposes of ECF No. 8.

**IT IS SO ORDERED.**

Dated: October 9, 2012

_____
LAUREL BEELER
United States Magistrate Judge